**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

APRIL DAWN NUTTER,

Plaintiff,

v. CIVIL ACTION NO. 2:21-cv-00033

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This is an action seeking review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act. By *Standing Order* (Document 3) entered on January 15, 2021, this matter was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for findings of fact and recommendations for disposition. On July 9, 2021, Judge Aboulhosn submitted his *Proposed Findings and Recommendations* (PF&R) (Document 14), recommending that the Court grant the Plaintiff's request for judgment on the pleadings, deny the Defendant's request to affirm the decision of the Commissioner, reverse the final decision of the Commissioner and remand this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to allow the Administrative Law Judge (ALJ) to evaluate the Claimant's treating source opinion in accordance with *Dowling v. Commissioner of Social Security* and 20 C.F.R. 404.1527(c)(2).

The Court has reviewed the Commissioner's *Objections to the Proposed Findings and Recommendation* (Document 15), as well as the original briefing, the administrative record (Document 10 and attachments), and the PF&R. For the reasons stated herein, the Court finds that the objections should be overruled.

The Claimant, April Dawn Nutter, filed an application for DIB on February 10, 2016, alleging that her disability began on May 17, 2012, subsequently amended to February 23, 2015. She alleged that she is disabled because of multiple sclerosis, bipolar disorder, depression, and chronic bronchitis. Her claim was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) entered an unfavorable decision on June 19, 2018. The Appeals Counsel granted a request for review and remanded the matter. After another administrative hearing, an ALJ again entered an unfavorable decision on May 20, 2020. The Appeals Counsel denied another request for review, and the ALJ's decision became the final decision of the Commissioner on November 18, 2020.

Ms. Nutter was considered a "younger person" throughout the underlying proceedings. She has a high school education and previous work experience as a correctional officer and medical assistant. She began seeing doctors for imbalance in December 2014 and was diagnosed with multiple sclerosis. Dr. Barry Vaught, a neurologist, provided treatment. She had regular visits between her alleged onset date of February 23, 2015 and late 2017, when Dr. Vaught signed an opinion letter describing her limitations. Her symptoms responded well to medication, and she did not develop new MS symptoms, although she continued to experience some symptoms. Her records often note normal gait, normal bulk/tone, no ataxia, and normal motor strength.

In the opinion letter, Dr. Vaught and a nurse practitioner, who drafted the opinion form, indicated that Ms. Nutter "could stand and walk 1 hour each in an 8-hour workday, sit 6 hours in an 8-hour workday, lift up to 20 pounds occasionally and 10 pounds frequently, carry up to 20 pounds rarely and up to 10 pounds occasionally, and required an at will stand/sit option." (PF&R at 9.) "They further opined that Claimant had reaching, postural, and environmental limitations" and "would likely be absent form work 4 days per month and off task due to attention and concentration issues 25% of the day." (PF&R at 9–10.)

Her primary care providers, Wendy Godby and Debra Mooney, provided treatment for depression, routine illnesses and minor injuries, including those resulting from frequent falls, and occasional complaints related to her multiple sclerosis. In November 2017, Ms. Mooney completed a form "opining that Claimant had mild-to-moderate limitations in mental functioning" and "would not be off-task during the workday but would miss 4+days per month of work." (PF&R at 12.) Ms. Godby completed a form "opining that Claimant could stand 2 hours, walk 1 hour, and sit 6 hours in an 8-hour workday" and "could lift up to 20 pounds occasionally and carry up to 10 pounds frequently." (PF&R at 13.) "She also opined that Claimant had lifting limitations on the left, postural limitations, and environmental limitations" and "would likely be absent from work 4 days per month and off task due to attention and concentration issues 5% of the day." (PF&R at 13.)

State agency experts found insufficient evidence to evaluate her claims due to her failure to return forms.

During the administrative hearing, Ms. Nutter testified that she experiences fatigue throughout the day, requires several rest breaks, has difficulty standing and walking because of

weakness, balance issues, and intermittent numbness in her feet. She stated that she could be productive for four to five hours in a sixteen-hour day. She also stated that her MS causes bladder dysfunction. She testified that she has weakness in her hands and arms, difficulty with coordination, migraine headaches, shortness of breath, sensitivity to scents and smoke and difficulty with focus and depth perception. She explained that she has difficulty keeping up with all her medical appointments and household tasks because of her depression and anxiety and she requires family help with housework.

The ALJ found that she "had the residual functional capacity (RFC) to perform light work except:

> She could lift and carry 20 pounds occasionally and 10 pounds frequently. She was capable of standing and walking for 4 hours in an 8-hours workday; and was capable of sitting for 6 hours in an 8-hours workday. She could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl, but could never balance. She could not operate foot controls with the left lower extremity. She could perform occasional pushing/pulling and overhead reaching with the bilateral upper extremities. She could tolerate occasional exposure to extreme cold, heat, vibration, and workplace hazards such as moving machinery or unprotected heights. She was limited to simple, routine, repetitive work that is not at an assembly line or production rate pace. She was capable of occasional interaction with the public."

(PF&R at 6, quoting from Tr. at 16, Finding No. 5.) Given those limitations, a vocational expert (VE) testified that an individual with her limitations and history could not perform her past relevant work, but could perform the jobs of document preparer, machine operator, and assembler. If the individual were off-task 15% or more of the workday or absent two or more days per month, there

would be no jobs available. Further, if the individual were "limited to occasionally or less in fingering or feeling, then all three jobs identified would be eliminated." (PF&R at 15.)

## APPLICABLE LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step sequential inquiry to determine eligibility for social security disability benefits. If a claimant is determined not to be disabled at one step, the evaluation does not proceed to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)). The Fourth Circuit has summarized the five-step process as follows:

> the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work." *Id.* at 635(citing 20 C.F.R. § 416.945(a)(1)). If the claimant is able to perform his or her past work, the ALJ can find the claimant not to be disabled. *Id.* If the claimant is not able to perform his or her past work, the ALJ proceeds to step five, where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other

work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* (citing 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429).

**STANDARD OF REVIEW**

The Federal Magistrates Act requires a district court to conduct a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Running parallel with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See*

*Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "When examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

**DISCUSSION**

The Magistrate Judge found that the ALJ gave partial weight to the opinion of Dr. Vaught and Ms. Conner without considering "each of the regulatory factors enumerated under Section 402.1527." (PF&R at 18.) He relied on *Dowling v. Commissioner of Social Security Administration*, 986 F.3d 377 (4th Cir. 2021), and 20 C.F.R. 402.1527(c) for the proposition that *all* factors must be considered if the treating source opinion is not given controlling weight. The Magistrate Judge further reasoned that "because substantial evidence does not support the ALJ's evaluation of the treating source opinion to the extent that all the regulatory factors were not considered, the resulting RFC determination is flawed." (PF&R at 19.)

The Commissioner objected, arguing that "for benefits applications filed prior to March 27, 2017, such as in this case, a 'treating physician's opinion is afforded controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence.'" (Obj. at 3, quoting PF&R at 17, citing 20 C.F.R. 404.1527(c)(2).) The Commissioner contends that the Magistrate Judge appropriately found that the decision not to give the treating source opinion controlling weight was supported by substantial evidence. The Commissioner further argues that the ALJ gave adequate attention to the appropriate relevant factors in evaluating what weight to assign to the treating physician opinion. The Commissioner argues that, reading the opinion as a whole, the ALJ adequately addressed the factors because the ALJ noted Dr. Vaught's specialty, when Ms. Nutter began to see him and the duration of the treating relationship, the supportability and consistency of the opinion, and expressly "stated that she 'considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.'" (Obj. at 4, quoting Tr. at 16.)

In declining to give controlling weight to Ms. Conner and Dr. Vaught's opinion, the ALJ found that some limitations they listed were not supported by the medical evidence, including records from Ms. Nutter's visits to their office. The ALJ's opinion recounts Ms. Nutter's medical history, including when she initiated care with Dr. Vaught and received her MS diagnosis and treatment notes from her regular visits to his office.

Although the ALJ referenced 20 C.F.R. 1527, the opinion does not contain analysis of the listed factors that must be considered when a treating source is not given controlling weight. Section 404.1527(c) requires consideration of the examining relationship, treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the

treatment relationship, supportability, consistency, specialization, and other factors. The ALJ's opinion addressed the supportability of Ms. Conner and Dr. Vaught's opinion and its consistency with the record, but did not address the remaining factors, most of which would have suggested providing their opinion with more weight. For example, although the ALJ's opinion references the length of the treatment relationship in recounting when Ms. Nutter began seeing Dr. Vaught and how regularly she saw him, nothing in the opinion suggests that she considered the relatively lengthy relationship, regular visits and examinations, or Dr. Vaught's specialization in evaluating how much weight to give their opinions.

In *Dowling v. Comm'r of Soc. Sec. Admin.*, the Fourth Circuit found substantial evidence for the decision not to give controlling weight to a treating source's medical opinion because "a reasonable mind could conclude that the opinion conflicts with other evidence in the record." 986 F.3d 377, 385 (4th Cir. 2021). However, the court found that the ALJ had failed to give the required consideration to "each of the six 20 C.F.R. §404.1527(c) factors." *Id.* "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* (emphasis in original).

The Commissioner seeks to distinguish *Dowling* because the ALJ there failed to even reference the § 404.1527(c) factors, while the ALJ in this case included a line stating that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (Tr. at 16.) However, as the Fourth Circuit made clear, simply referencing the factors will not suffice to provide the "meaningful discussion" necessary to "facilitate judicial review." *Dowling*, 986 F.3d

at 386. The Court cannot determine that substantial evidence supported the weight accorded to Ms. Connor and Dr. Vaught's opinions regarding Ms. Nutter's limitations because the record does not contain the ALJ's reasoning as to each of the required factors. As the Magistrate Judge found, the error in evaluating the treating source opinion infects the RFC determination that is based in part on the rejection of some of the suggested limitations.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Commissioner's *Objections to the Proposed Findings and Recommendation* (Document 15) be **OVERRULED** and that the Magistrate Judge's *Proposed Findings and Recommendations* (Document 14) be **ADOPTED**.

The Court further **ORDERS** that the *Brief in Support of Plaintiff's Motion for Judgment on the Pleadings* (Document 12) be **GRANTED** and that the Commissioner's *Brief in Support of Defendant's Decision* (Document 13) be **DENIED**.

Finally, the Court **ORDERS** that the final decision of the Administrative Law Judge be **REVERSED** as to the denial of DIB, that this matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g), including evaluation of the Claimant's treating source opinion in accordance with *Dowling v. Commissioner of Social Security* and 20 C.F.R. 404.1527(c)(2), and that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Aboulhosn, to counsel of record and to any unrepresented party.

ENTER: October 12, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA